IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PHILIP SIMS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Cause No. 4:09-cv-1213 |
| | ) | |
| VS. | ) | |
| | ) | |
| | ) | |
| PROGRESSIVE DIRECT | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION TO DETERMINE VALUE OF MEDICAL
TREATMENT PURSUANT TO MISSOURI REVISED STATUTE 490.715 AND
SUGGESTIONS IN SUPPORT**

COMES NOW Plaintiff, pursuant to R.S.Mo, § 490.715, and moves the Court to determine the value of the medical treatment rendered to plaintiff Phil Sims that was reasonable, necessary and a proximate result of the negligence of Tortfeasor Larry Joiner. In support of this motion, plaintiff states as follows:

**ARGUMENT AND AUTHORITY**

Plaintiff's treating medical doctor, Stanley Martin, M.D. of Metropolitan Neurosurgery has testified that the amounts billed to plaintiff by providers St. Joseph's Hospital, St. Charles County Ambulance, Dr. Myer-Cherry of First Capital Family Medicine, Metro Imaging, Hanger Prosthetics and St. Charles Sports and PT, as well as himself,(as reflected on Plaintiff's Exhibit 7A-G), were reasonable and represent the reasonable value of the services rendered to Plaintiff Phil Sims, and that the treatment represented by those charges was reasonable and necessary for the injuries that plaintiff sustained.  (Martin deposition, pages 48-50).  It is anticipated that plaintiff's other treating doctor, Dr. Roy Hillgartner, D.C. of Ballwin Chiropractic will similarly testify live at trial concerning those same bills and treatment as well as his own bills and treatment (as reflected on Plaintiff's Exhibit 7H-I).  In addition, plaintiff will submit

1

affidavits from those same providers which also state that the treatment rendered by those providers was reasonable and necessary and that the associated bills for that treatment were reasonable and represents the reasonable value of the services rendered by those providers (Exhibit 26 A-H). Phil Sims has testified that all of the bills have been paid. (Sims' deposition, page 46).

Such testimony establishes that the amount billed by healthcare providers equals the value of medical treatment rendered. Under Missouri law a plaintiff who seeks recovery for medical expenses has the burden of producing substantial evidence that the charges are both reasonable and necessary. See e.g., Wise v. Towse, 366 S.W.2d 506, 508 (Mo. Ct. App. 1963). For many years Missouri courts have allowed plaintiffs to provide the reasonableness of their medical bills either by having an expert witness testify to their reasonableness, or by presenting testimony that the bills had been paid. Id.; Wright v. Fox-Stanley Photo Products, Inc., 639 S.W.2d 407, 410 (Mo. Ct. App. 1982). The plaintiff's testimony of payment is considered sufficient evidence from which the jury can draw an inference that the charges were reasonable, because "It is presumed that if the chargers were not reasonable [plaintiff] would not have paid them." Williams v. Jacobs, 972 S.W.2d 334, 342 (Mo. Ct. App. 1998) (citations omitted).

An injured party may recover the cost of medical bills by demonstrating that such medical bills were reasonable and resulted from necessary treatment. Brown v. Van Noy, 879 S.W.2d 667, 676 (Mo. App. W.D. 1994). An injured party may prove that medical expenses were reasonable and treatment necessary by providing affidavits from medical service providers attesting to the same. See Mo. Rev. Stat. § 490.525.2-3 (2008).

1.    R.S.Mo. § 490.715 states, in relevant part, as follows:

5.(1) Parties may introduce evidence of the value of the medical treatment rendered to a party that was reasonable, necessary, and a proximate result of the negligence of any party.

(2) In determining the value of the medical treatment rendered, there shall be a rebuttable presumption that the dollar amount necessary to satisfy the financial obligation to the health care provider presents the value of the medical treatment rendered. Upon motion of any party, the court may determine, outside the hearing of the jury, the value of the medical

2

treatment rendered based upon additional evidence, including but not limited to:

    (a)    The medical bills incurred by a party;

    (b)    The amount actually paid for medical treatment rendered to a party;

    (c)    The amount or estimate of the amount of medical bills not paid which such party is obligated to pay an entity in the event of a recovery.

2.    As set forth in the paragraphs above, R.S.Mo. § 490.715.5(2) authorizes the Court to determine, outside the hearing of the jury, the value of the medical treatment rendered based upon additional evidence, including but not limited to the medical bills incurred by a party.

3.    Drs. Martin and Hillgartner will present the only evidence on this issue, and plaintiff's affidavits are not refuted by contrary affidavits. Defendants will present no evidence contrary to these two doctors' testimonies. Accordingly, the court should permit the plaintiff to present to the jury the amounts plaintiff Phil Sims was billed for such medical treatment and services as Dr. Martin's testimony and the anticipated testimony of Dr. Hillgartner rebuts the presumption "that the dollar amount necessary to satisfy the financial obligation to the health care provider represents the value of the medical treatment rendered." § 490.715.5(2).

4.    As a federal court applying Missouri law, this Court's duty is "to ascertain and apply the law of the state, that is, to determine what the highest court would declare state law to be if the case were before it." Guillard v. Niagara Machine Tool Works, 488 F.2d 20, 24 (8th Cir. 1973)

5.    Most recently, the Missouri Supreme Court in Klotz v. St. Anthony's Medical Center, et. Al, No. SC90101 (Mo. Banc. Mar. 23, 2010), held that the presumption contained in § 490.715.5(2) could be properly rebutted by expert testimony that the billed medical expenses were reasonable. In addition, Klotz also held that the full amounts billed could be submitted to the jury as the actual amount of medical expenses. Id.

3

The Missouri Court of Appeals for the Eastern District in <u>Berra v. Danter</u>, No. ED92279 (Mo. App. E.D. 2009), held that plaintiff met his burden in overcoming the medical bills presumption as set forth in Mo. Rev. Stat. § 490.715.5 by attaching copies of his medical bills and affidavits from his healthcare providers to his motion. The defendant argued that plaintiff did not rebut the presumption and the trial court should only have admitted evidence concerning "the amount plaintiff actually paid to satisfy his medical bills" because medical bills incurred as contained in § 490.715.5(2) means "only those amounts actually paid for services rendered, not the amounts billed." <u>Id.</u> The court disagreed and stated "Missouri courts have not given the word 'incurred' this meaning. Rather, our courts have consistently distinguished amounts 'incurred' from amounts 'paid'." <u>Id.</u> (internal citations omitted). In so holding the court relied upon <u>Litton v. Kornburst</u>, 85 S.W.3d 110, 115 (Mo. App. 2002) and <u>Burwick v. Wood</u>, 959 S.W.2d 951, 952 (Mo. App. 1997), which construed "incurred" under another statute to mean "to be liable for." <u>Id.</u> The court went on to say:

> Defendant's interpretation of 'incurred' in subsection (a) of section 490.715.2 as the amount 'paid' is not only inconsistent with the prior definition given to 'incurred' by our courts, but also this interpretation would make subsection (b) of section 490.715.2, which specifically allows evidence of the amount paid for medical treatment superfluous. We presume that by listing these two categories of evidence separately, the legislature intended that they have different meanings.

<u>Id.</u> (internal citations and quotations omitted).

Therefore, Berra had successfully rebutted the statutory presumption and his medical bills were equal to amounts charged. <u>Id.</u> The Missouri Supreme Court denied transfer of this decision, so arguably it is considered as a "correct" decision by that body and would seem to indicate that the Supreme Court would not decide otherwise.

6.      This issue has been addressed by a number of other trial courts throughout the state of Missouri. Other Missouri Courts have held that when a

plaintiff rebuts the presumption (that the amount paid is the value of the medical treatment under R.S.Mo. § 490.715) with other evidence, the presumption is gone. Several Missouri Courts have held that the amount charged by the medical provider is the "value" of the medical services that can be submitted to the jury by the plaintiff. Such rulings are based upon evidence similar to Dr. Martin's testimony and the anticipated testimony of Dr. Hillgartner. (See attached Appendix A).

7. A presumption is not itself evidence. <u>Kellog v. Murphy</u>, 164 S.W.2d 285 (Mo. 1942); <u>State ex rel. Christian v. Lawry</u>, 405 S.W.2d 729 (Mo. App. 1966). Rather, it simply shifts the burden to plaintiff, to introduce some evidence rebutting it. *Id.* It has long been held by Missouri courts that once contrary evidence is introduced, the presumption disappears. <u>Forbis v. Forbis</u>, 274 S.W. 2d 800, 807 (Mo. App. 1955), <u>Word v. Jenner's Estate</u>, 189 S.W. 2d 173 (Mo. App. 1945), <u>Mercantile Bank v. Vilkins</u>, 712 S.W. 2d 1 (Mo. App. 1986); <u>State ex rel. Christian v. Lawry</u>, 405 S.W. 2d 729 (Mo. App. 1966). The fact is then determined "as if no presumption had ever been in effect." <u>Costello v. Miranda</u>, 137 S.W. 3d 498 (Mo. App. 2004); see also, <u>JD v. MD</u>, 453 S.W. 2d 661 (Mo. App. 1970).

8. Because the only evidence presented will be the testimony of Drs. Martin and Hillgartner that the value of the medical services rendered to plaintiff Phil Sims equals the full amount of his healthcare providers' bills, the presumption is rebutted by competent evidence. Additionally, the affidavits which sufficed in the <u>Berra</u> case and a second layer of evidence to rebut the presumption. This finding not only follows clear Missouri law but likewise follows common sense.

9. In determining the value of patient services, a health care provider relies on generally accepted standards in the medical community and bills accordingly. Health care providers, do, however, make business decisions to require payment of less than full value from certain insurance companies with whom they have negotiated lower rates. These reductions

are based on a contractual promise by an insurance company to cover all insureds who receive medical treatment and to promptly pay claims for all insureds. In exchange for a health care provider's agreements to accept payments less than their charged amounts from certain insurance companies, the health care provider receives economic benefits beyond the actual cash payment it accepts. These economic benefits include being listed an approved provider, advertising benefits, and referrals that result in additional patient volume, as well as the benefit of being guaranteed at least some payment within a specified time frame.

10.     Additionally, to hold that the value of a medical service is the amount paid by a private health insurance company would mean that doctors, hospitals, and other health care providers are committing fraud in overbilling patients and insurance companies as well as committing mail fraud by sending bills for the entire charged amount through the U.S. Postal system.

11.     Section 5(1) of R.S.Mo § 490.715 authorizes a plaintiff to introduce at trial "evidence of the value of medical treatment rendered." Section 5(2) contains a rebuttable presumption that "the value of the medical treatment rendered" is "the dollar amount necessary to satisfy the financial obligation to the health care provider."

12.     Plaintiff's evidence conclusively rebuts the presumption provided in section 490.715.5. The evidence necessary to rebut a presumption is "that which a reasonable mind would accept as sufficient to support a particular conclusion, granting all reasonable inference[s] which can be drawn from it." Catroppa v. Metal Building Supply, Inc., 267 S.W.3d 812. Under Section 490.525 and Missouri law, these affidavits and trial testimony are sufficient to support the conclusion that such amounts charged were reasonable and treatment was necessary. In this case, plaintiff's evidence rebuts the presumption set forth in 490.715.5(2) because such amounts are documented as reasonable reflections of the value of the underlying services by sworn affidavits and sworn testimony.

6

13.   Defendant argues that the "value of the medical treatment rendered" is limited to only the amount actually paid for medical treatment rendered. However, this argument is contrary not only to the affidavits and the testimony of Dr. Martin and the anticipated testimony of Dr. Hillgartner, but also to Missouri law and the legislative history of the statute.

14.   The legislative history reveals that the "value of the medical treatment rendered" for purposes of this statue is not the amount of medical bills actually paid.[1]   The initial version of the amended R.S.Mo. § 490.715 was set forth in House Bill 393 of the 93rd General Assembly (hereinafter "HB 393") and did not include sub-sections 5(1) and 5(2), but a single subsection (5) which stated as follows:

> 5.      Parties may introduce evidence of the amount actually paid for medical treatment rendered to a party that was reasonable, necessary, and the proximate result of the negligence of any party. No party may introduce evidence of billing for an amount in excess of the amount actually paid for said medical treatment for which payment was made, and if no payment was made, then a party may only introduce evidence of the amount necessary to satisfy the financial obligation remaining to the health care provider.

15.   Thus, as originally drafted on January 31, 2005, the proposed amendments to § 490.715(5) permitted only the introduction of evidence of "the amount actually paid for medical treatment rendered."   Further, the introduction of "evidence of billing for an excess of the amount actually paid" was specifically prohibited by the proposed amendment.   The summary of HB 393 as initially introduced confirms this. ("Allows parties to introduce amounts actually paid for medical treatment rendered to a party…").

16.   On February 10, 2005, the language of this proposed bill was revised by the House Committee on the Judiciary to its current form.   With no further changes, those Committee revisions were perfected by the House, agreed to by the Missouri Senate and approved by the Governor.   In other words,

---

[1] Legislative intent may be ascertained by reference to the substantive legislative history, or drafting history, of a bill. *Trout v. State*, 231 S.W.3d 140, 147 (Mo. 2007).  In that regard, it is necessary to track a bill through the legislative process. *Id.*

the Committee revisions became the statute in its current form. In its current form, "the amount actually paid" is no longer the primary consideration, but instead is only one part of a broader inquiry regarding "the amount necessary to satisfy the financial obligation to the health care provider."

17.  Stated another way, legislative history of § 490.715 shows that the legislature did not intend to take a holistic approach, using three factors to determine the value of the medical treatment rendered, *only if* the court *chooses* to hold a hearing. Otherwise, the legislature mandates that "no evidence of collateral sources shall be made known to the jury in presenting the evidence of the value of the medical treatment rendered." R.S.Mo. § 490.715.

18.  The rules of statutory construction also indicate that the value of medical treatment is not limited to amounts actually paid. In construing a statute, a court should avoid a construction which would result in redundant and superfluous provisions. Estate of DeWitt v. State, 603 S.W.2d 931 (Mo. 1980). A legislative act's provisions must be construed and considered together and, if possible all provisions must be harmonized and every clause given some meaning. Boyd v. State Bd. Of Registration for Healing Arts, 916 S.W.2d 311, 315 (Mo. App. 1995). The legislature is presumed not to enact meaningless provisions. *Id.* Applying these rules of statutory construction to avoid redundancy and meaningless provisions, the "dollar amount necessary to satisfy the financial obligation to the health care provider," as that provision is set forth in subpart 5(2) above, must therefore mean something different than "the amount actually paid," as that provision sets forth in subpart 5(2)(b) above. If these two phrases were to mean the exact same thing and only the exact same thing, the legislature would be enacting both redundant and meaningless provisions in this statute. Such constructions are not permissible. Therefore, under the rules of statutory construction, "the dollar amount necessary to satisfy

8

the financial obligation to the health care provider" is not limited to, and does not mean, only the amount actually paid.

19. Any ambiguity in the statute must be resolved in favor of the clear legislative intent not to limit plaintiffs' evidence to amounts actually paid. Sullivan v. Carlisle, 851 S.W.2d 510, 512 (Mo. Banc. 1993). Furthermore, the statute should be interpreted in a way that minimizes rather than expands its derogation of the common law collateral source rule. Huff v. Union Electric Co., 598 S.W.2d 503, 511 (Mo. App. 1980).

20. **Issues of Equity and Fairness**

Allowing defendant to submit evidence of collateral source payments also undermines equality. For example, consider a situation in which two passengers in the same vehicle are injured in an accident. If Party A has insurance and Party B does not, Party B may be permitted to introduce the total amount of his medical bills while Party A may only be allowed to introduce some lesser amount. This is not a desirable outcome because it treats an insured plaintiff less favorably than a plaintiff without insurance. How can "value" of treatment be different for these litigants who were in the same collision? The Court should consider this potential effect.

**Constitutional Issues**

21. Right to a Jury Trial

R.S.Mo. § 490.715 denies the right to a jury trial on the issue of damages in violations of Article I, Section 22(a) of the Missouri Constitution. In Adams v. Children's Mercy Hospital, 832 S.W.2d 898, the plaintiff challenged the constitutionality of § 538.210, which placed a cap on non-economic damages in medical malpractice cases. There, the court noted that a jury's primary function is fact-finding and that this fact-finding role includes a determination of the plaintiff's damages. *Id.* at 907, citing Jaycox v. Brune, 434 S.W.2d 539 (Mo. 1968). However, the court held that the statute did not deny the plaintiff her right to a jury trial because the jury was allowed to assess liability and determine damages, thus

fulfilling its constitutional function. *Id.* Here, unlike <u>Adams</u>, the use of a hearing to determine damages under § 490.715.5 would preempt the jury's determination as to damages and thus deny plaintiff his right to a jury trial on that issue.

22.  <u>Failure to Contain a Single Subject</u>

R.S.Mo. § 490.715 is unconstitutional in that it stems from a legislative bill that violates Article III, Section 23 of the Missouri Constitution, which requires every bill to contain a single subject which is clearly expressed in its title. House Bill 393 which spawned R.S.Mo. § 490.715 violates another provision of the Missouri Constitution on both procedural and substantive grounds, by failing to have a single, clear subject. Rather than have a single subject, House Bill 393 repealed nineteen (19) different statutory sections dealing with a myriad of different subjects, from appellate bonds, to venue. It also enacted twenty-three (23) new provisions on a veritable cornucopia of topics. Having failed to comply with the constitutional mandate that a bill have only one subject, clearly identified, it must be stricken. Article III Section 23 of the Missouri Constitution provides:"[n]0 bill shall contain more than one subject which shall be clearly expressed in its title…" (Please see Appendix, Exhibit B) This provision imposes two distinct procedural limitations when the General Assembly attempts to pass any legislation: (1) A bill cannot contain more than one subject (single subject requirement); and (2) the subject of the bill must be clearly expressed in its title (clear title requirement). <u>Carmack v. Director, MO Dept of Agr.,</u> 945 S.W.2d 956, 959 (Mo. Banc 1997). A similar provision has been part of every Missouri Constitution since 1865. <u>Hammerschmidt v. Boone County,</u> 877 S.W.2d 98, 101 (Mo. Banc 1994). Its terms are mandatory, and not directory. *Id.* at 102.

The question is whether House Bill 393, the bill which enacted Revised 490.715 involved a single, clear subject. Even a cursory review of the bill shows it does not meet either of these two mandatory requirements. Section 490.715 was one of <u>twenty-three</u>

10

(23) new sections, which replaced nineteen repealed sections, contained in House Bill 393. The title of House Bill 393 was: "AN ACT to repeal sections 355.176, 408.040, 490.715,508.010,508.040,508.070,508.120,510.263,510.340,516.105,537.035,537.067,537.090,538.025,538.210,538.220,538.225,538.230, and 538.300, R.S.Mo., and to enact in lieu thereof twenty-three new sections relating to claims for damages and the payment thereof." Please see Appendix, Exhibit C.

The new sections included statutory provisions on items with chapter title ranging from Not-for-Profit Corporations (R.S.Mo. § 355.176) to Appeals and Appellate Procedure for Bonds (R.S.Mo. § 512.099). The bill changes the law on interest (R.S.Mo. § 408.040), evidence (R.S.Mo. § 490.715 the amendment at issue) and § 537.090 (setting forth a rebuttable presumption regarding the value of deceased individuals), venue (R.S.Mo § 508.010, discovery (R.S.Mo. § 510.263), the statute of limitations for certain claims (R.S.Mo. § 516.105), and joint and several liability (R.S.Mo. § 537.067). It includes changes to Missouri's privilege laws *R.S.Mo. § 537.035 regarding Peer Review of medical treatment), and contains a grant of immunity for negligence (R.S.Mo. § 538.228). It even includes an amendment regarding how expression of sympathy or "benevolent gestures" should be treated (R.S.Mo. § 538.229.1). Please see Appendix, Exhibit C.

The various sections and Chapters of HB 393 address multiple, disparate areas. For instance, 355.176, a section on service and venue of not-for-profit corporations, has absolutely nothing to do with the express subject of the bill, damages and the payment thereof. Interestingly, this same statute was a section in House Substitute for Senate Bill 768 (HSSB 768) which was enacted into law in 1996. It was declared to be unconstitutional as violating Article III, Section 23, in its entirety, on the grounds that the narrative portion of the bill's title, indicating that it related to "certain incorporated and non-incorporated entities" was too broad and too amorphous to identify a single subject, and that the statute section numbers to be repealed as listen in title of the bill did not sufficiently relate to a single type of entity for the title to satisfy the clear title requirement. See St. Louis HealthCare Network v. State, 968 S.W.2d 145 (Mo. Banc 1998). Grafting this section into House Bill 393 creates constitutional issues for the same reasons.

11

The title of HB 393 is so broad and amorphous in scope that it fails to give notice of its content, which effectively renders the "single subject" requirement meaningless and obscures the actual subjection of the legislation.   Please see also Home Builders of Greater St. Louis v. State, 75 S.W.3d 267 (Mo. Banc 2002), where the court held that a bill entitled "relating to property ownership" was overbroad on the same grounds. *Id.* at 272.

House Bill 393 violates both the clear title rule, and the single subject rule of Article III, section 23 of the Missouri Constitution.   Its failure to have a clear single subject as required, mandates it be invalidated.   Home Builders Association of Greater St. Louis v. State, 75 S.W.3d 267, 271-272 (Mo. Banc 2002).

<div style="margin-left:40%">

Respectfully submitted,
ROBERT J. ALBAIR, P.C.


ROBERT J. ALBAIR, #25300
13421 Manchester Road, Suite 105
St. Louis, MO 63131
(314) 686-4040
(314) 686-4041 fax
Attorney for Plaintiff

</div>

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served upon Defendant via the Court's electronic filing system.

DATED this ___7___ day of ___June___, 2010.

ROBERT J. ALBAIR, P.C.

_____
ROBERT J. ALBAIR, #25300
13421 Manchester Road, Suite 105
St. Louis, MO 63131
(314) 686-4040
(314) 686-4041 fax
r_albair@msn.com

13

# APPENDIX

Other Court's Orders and Rulings …………………………………………   A

Missouri Constitution Article III, Section 23 …………………………………   B

Missouri 2005 Legislative Service …………………………………………   C