UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PHILIP SIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV1213 CDP |
| | ) | |
| PROGRESSIVE DIRECT | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

In this underinsured motorist case, plaintiff Philip Sims was injured on January 13, 2008 after being in an automobile collision with non-party Larry Joiner, who was at fault for the collision. Although Sims received $50,000 from Joiner's insurance company, the amount Sims received was insufficient to cover his expenses, so he filed this action against his own insurance company, defendant Progressive Direct Insurance Company, to recover additional funds under the underinsured motorist provision of his policy. On August 31, 2010, the issue of the amount of Sims's damages from the collision was presented to a jury. That same day, the jury returned a verdict finding that the total value of Sims's damages was $100,000.

Defendant now moves for judgment in the amount of $45,000, equal to the

jury's verdict of $100,000 minus $50,000 Sims received from Joiner's insurance

company and another $5000 Progressive paid Sims several months after his

collision.  Sims responded by filing his own motion for judgment in the amount of

$100,000.  Because I conclude that the insurance policy unambiguously provides

that Progressive reduce its payments to Sims by amounts Sims already received, I

will enter judgment in the amount of $45,000.

## Discussion

In its motion, Progressive contends that the jury's verdict should be reduced

to $45,000, because the policy limits Progressive's obligation to pay by those

amounts already paid to Sims, and also prohibits duplicative payments.  Sims

responds that Progressive waived these reductions to the jury's verdict because it

did not plead them in sufficient detail as affirmative defenses in its answer.  Sims

is mistaken.  Even under Missouri procedural rules, it is questionable whether

Progressive was required to plead these defenses as affirmative defenses at all,

because they are not the sort of set-off defense or counterclaim cited in plaintiff's

briefs that should raised in a responsive pleading.  *Cf. Edmonds v. Stratton*, 457

S.W.2d 228, 232 (Mo. Ct. App. 1970) (describing the set-off counterclaim as "a

remedy employed by a defendant to discharge or reduce the plaintiff's demand by

an opposite one arising from a transaction which is extrinsic to the plaintiff's

cause of action."). In any event, Progressive did state in its first amended answer

that it was "entitled to a set off for amounts paid to Plaintiff by anyone for the

injuries sustained in the accident described in Plaintiff's Petition." This is

sufficient to give Sims notice of Progressive's intent to argue that Sims's damages

should be reduced by any amount Sims already received in connection with his

automobile collision. Nothing more is required. *See* Fed. R. Civ. P. 8; *cf.*

*Carpenter v. Ford Motor Co.*, 761 F. Supp. 62, 65 (N.D. Ill. 1991) (refusing to

strike a defendant's affirmative defense as insufficient because the Federal Rules

of Civil Procedure generally only require notice pleading and defendant's

affirmative defense sufficiently apprised plaintiff of defendant's intent to argue

that plaintiff failed to mitigate her damages).

Moreover, even if Progressive were required to plead this right to reduction

with greater detail as an affirmative defense in its answer, Sims has failed to show

unfair surprise sufficient for me to conclude that Progressive waived the right to

assert it now. *See Financial Timing Publ'ns, Inc. v. Compugraphic Corp.*, 893

F.2d 936, 944 n.9 (8th Cir. 1990) ("When an affirmative defense is raised in the

trial court in a manner that does not result in unfair surprise, . . . technical failure

to comply with Rule 8(c) is not fatal."). The fact that Progressive would attempt

to reduce Sims's damages by the amount he received from Joiner's insurance

company was discussed in the pre-trial conference with counsel, was the subject of

motions in limine by both parties, and was the impetus for the parties' post-trial

motions on the proper amount of the judgment.  Most importantly, the basis for the

reduction in damages – Sims's insurance policy with Progressive – has been in

Sims's possession since before the accident, and Sims himself offered it as

evidence at trial.  Similarly, Sims received the $5000 from Progressive in October

of 2008 and had in his possession at that time the insurance policy prohibiting

duplicative payments under the policy.  Given this history, Sims cannot now claim

unfair surprise.

Additionally, I agree with Progressive that, under the insurance policy

between Sims and Progressive, the jury's verdict must be reduced by the amounts

already received by Sims.  Here, the insurance policy's "UNDERINSURED

MOTORIST COVERAGE" section provided that Progressive would:

> pay for damages that an **insured person** is legally entitled to recover
> from the owner or operator of an **underinsured motor vehicle**
> because of **bodily injury**:
>   1. sustained by that **insured person**;
>   2. caused by an accident; and
>   3. arising out of the ownership, maintenance, or use of
>   an **underinsured motor vehicle**.

That section also contained a "Limits of Liability" provision, however, that

reduced Progressive's liability to Sims by those amounts "paid because of **bodily**

**injury** by or on behalf of any persons or organizations that may be legally

responsible . . . ." Finally, the section stated that no person "will be entitled to duplicative payments for the same elements of damages."

It is well settled under Missouri law that courts are to apply rules of contract construction when interpreting insurance policies, because insurance policies are contracts. *Blair By Snider v. Perry County Mut. Ins. Co.*, 118 S.W.3d 605, 606 (Mo. 2003) (en banc). The primary rule in contract construction is to ascertain the parties' intent and give effect to that intent. *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 395 (Mo. 2001) (en banc). However, when an insurance policy is unambiguous, the rules of contract construction do not apply, and "absent a public policy to the contrary, the policy will be enforced as written." *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo. 1992) (en banc). In this case, the parties' policy unambiguously provides that Progressive is only liable to Sims for those amounts Sims would be legally entitled to receive from Joiner, and that Progressive is not liable to pay any amounts already paid to Sims by Joiner or Joiner's insurance company. The policy also unambiguously prohibits duplicative payments. Accordingly, I conclude that, under his insurance policy with Progressive, Sims is only entitled to judgment in the amount of $45,000, because Sims has already received payments of $50,000 from Joiner's insurance company and $5000 from Progressive. Any amount over $45,000 would be a duplicative payment, which is unambiguously prohibited by the policy.

Moreover, the Missouri Court of Appeals recently interpreted a similar underinsured motorist policy that limited the insurance company's duty to pay only those damages that an insured person was "legally entitled to recover from the owner or operator of an underinsured vehicle." *Keck v. American Family Mut. Ins. Co.*, 299 S.W.3d 63, 66 (Mo. Ct. App. 2009) (emphasis removed).  Like Sims, the plaintiff in *Keck* was injured in an automobile collision for which he was not at fault and received $50,000 from the tortfeasor's insurance company, although the plaintiff had damages of $80,000. *Id.* at 64.  He sought the full $80,000 from his own insurance company, but the insurance company refused to pay more than $30,000 in light of the $50,000 the plaintiff already received. *Id.*  Applying Missouri's rules of insurance policy construction to the policy – including the rule of construing insurance policy language to give it the meaning an ordinary person of average understanding would give it – the court determined that the plaintiff in that case was only entitled to $30,000 from the defendant, because that was the amount he would be legally entitled to receive from the tortfeasor. *Id.* (citing *Wendt v. General Accident Ins. Co.*, 895 S.W.2d 210, 216-17 (Mo. Ct. App. 1995) ("We find that the husband is not 'legally entitled to recover' from the underinsured motorist any funds already received by him in settlement.").

Similarly, in this case, the jury determined that Sims has damages in the amount of $100,000, but he has already received $50,000 from tortfeasor Joiner's

insurance company, as well as $5000 from Progressive.  Accordingly, Sims would

only be legally entitled to receive $45,000 from Joiner, or the unsatisfied portion

of Sims's $100,000 in damages, and, under the insurance policy, Progressive is

only required to pay Sims that amount.  *See id.*  This interpretation is further

supported by the by the underlying purpose of underinsured motorist coverage,

which is to place insureds in the position they would have been in had the

underinsured motorist been adequately insured.  *See Wendt*, 895 S.W.2d at 217.

For these reasons, I will enter judgment for plaintiff Philip Sims in the

amount of $45,000.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for judgment [#89] is

granted.

**IT IS FURTHER ORDERED** that plaintiff's motion for judgment [#94] is

denied.

A separate Judgment will be entered this same day in accordance with this

Memorandum and Opinion.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 27th day of September, 2010.